**No. 26-1397**

The United States Court of Appeals
for the Seventh Circuit

IAN CUYPERS,

*Plaintiff-Appellee,*

v.

JUSTIN TAYLOR, TAYLOR GAARD, MATTHEW BROWN and CITY OF SUPERIOR

*Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of Wisconsin
Case No. 24-CV-00743
Honorable Judge James D. Peterson

**BRIEF AND SHORT APPENDIX OF DEFENDANTS-APPELLANTS**

KILEY B. ZELLNER
Counsel of Record
WI State Bar No. 1056806
SAMUEL C. HALL, JR.
WI State Bar No. 1045476
MAXWELL P. CONGDON
WI State Bar No. 1139726
CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants-Appellants
710 N. Plankinton Avenue, Suite 500
Milwaukee, Wisconsin 53203
Phone: 414-271-7722
Fax: 414-271-4438
kzellner@crivellolaw.com
shall@crivellolaw.com
mcongdon@crivellolaw.com

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

The undersigned counsel for Defendant-Appellants furnishes the following list in compliance with Circuit Rule 26.1:

1.  The full name of every party the attorneys represent in this case:

    Superior Police Department Officers Justin Taylor, Taylor Gaard, and Sergeant Matthew Brown.

2.  The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in this court:

    Crivello, Nichols & Hall, S.C. represents Superior Police Department Officers Justin Taylor, Taylor Gaard, and Sergeant Matthew Brown.

3.  Any parent corporation and any publicly held company that own 10% or more of stock or shares:

    Not Applicable—Defendants-Appellees Superior Police Department Officers Justin Taylor, Taylor Gaard, and Sergeant Matthew Brown are municipal/governmental employees at all relevant times.

*/s/ Kiley B. Zellner*
KILEY B. ZELLNER
Counsel of Record
WI State Bar No. 1056806
CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants-Appellants
710 N. Plankinton Avenue, Suite 500
Milwaukee, Wisconsin 53203
Phone: 414-271-7722
kzellner@crivellolaw.com

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

The undersigned counsel for Defendant- Appellants furnishes the following list in compliance with Circuit Rule 26.1:

1. The full name of every party the attorneys represent in this case:

   Superior Police Department Officers Justin Taylor, Taylor Gaard, and Sergeant Matthew Brown.

2. The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in this court:

   Crivello, Nichols & Hall, S.C. represents Superior Police Department Officers Justin Taylor, Taylor Gaard, and Sergeant Matthew Brown.

3. Any parent corporation and any publicly held company that own 10% or more of stock or shares:

   Not Applicable—Defendants-Appellees Superior Police Department Officers Justin Taylor, Taylor Gaard, and Sergeant Matthew Brown are municipal/governmental employees at all relevant times.

> */s/ Samuel C. Hall, Jr.*
> SAMUEL C. HALL, JR.
> WI State Bar No. 1045476
> CRIVELLO, NICHOLS & HALL, S.C.
> Attorneys for Defendants-Appellees
> 710 N. Plankinton Avenue, Suite 500
> Milwaukee, Wisconsin 53203
> Phone: 414-271-7722
> shall@crivellolaw.com

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

The undersigned counsel for Defendant- Appellants furnishes the following list in compliance with Circuit Rule 26.1:

2.  The full name of every party the attorneys represent in this case:

    Superior Police Department Officers Justin Taylor, Taylor Gaard, and Sergeant Matthew Brown.

2.  The names of all law firms whose partners or associates have appeared for the party in the case or are expected to appear for the party in this court:

    Crivello, Nichols & Hall, S.C. represents Superior Police Department Officers Justin Taylor, Taylor Gaard, and Sergeant Matthew Brown.

3.  Any parent corporation and any publicly held company that own 10% or more of stock or shares:

    Not Applicable—Defendants-Appellees Superior Police Department Officers Justin Taylor, Taylor Gaard, and Sergeant Matthew Brown are municipal/governmental employees at all relevant times.

    */s/ Maxwell P. Congdon*
    MAXWELL P. CONGDON
    WI State Bar No. 1139726
    CRIVELLO, NICHOLS & HALL, S.C.
    Attorneys for Defendants-Appellants
    710 N. Plankinton Avenue, Suite 500
    Milwaukee, Wisconsin 53203
    Phone: 414-271-7722
    Fax: 414-271-4438
    mcongdon@crivellolaw.com

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT..................................................................... i

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT.................................................................... ii

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT.................................................................. iii

TABLE OF CONTENTS......................................................................... iv

TABLE OF AUTHORITIES ................................................................. vii

JURISTICTIONAL STATEMENT.......................................................... 1

STATEMENT OF THE ISSUES............................................................. 2

STANDARD OF REVIEW .................................................................... 3

STATEMENT OF THE CASE................................................................ 4

SUMMARY OF ARGUMENT ............................................................... 6

ARGUMENT .......................................................................................... 9

    I.    OFFICER GAARD IS ENTITLED TO QUALIFIED IMMUNITY BEAUSE NO CLEARLY ESTABLISHED LAW PROHIBITED HER CONDUCT UNDER THE CIRCUMSTANCES PRESENTED. ................................................................. 9

        A. Supreme Court Precedent Requires Highly Particularized Authority........................... 11

        B. *Abbott*, *Dockery*, *Ferguson*, And *Cyrus* Do Not Squarely Govern This Encounter. ... 13

        C. The District Court Improperly Converted *Abbott* Into A Categorical Rule. ................. 15

        D. At Minimum, The Law Did Not Clearly Establish That This Conduct Was Unconstitutional. ................................................................................. 16

        E. Officer Gaard's Conduct Was Not Obviously Unconstitutional................................. 17

    II.   THE DISTRICT COURT ERRED BY GRANTING CUYPERS PARTIAL SUMMARY JUDGMENT ON THE CONSTITUTIONAL-VIOLATION PRONG. ........................... 17

A. *Barnes* Requires Consideration Of The Entire Encounter. .......................................... 18

B. The District Court's Own Analysis Demonstrates That Cuypers Was Not Entitled To

Judgment As A Matter Of Law. ...................................................................... 18

III. OFFICERS TAYLOR AND GAARD ARE ENTITLED TO QUALIFIED IMMUNITY

ON CUYPERS' FIREARM-POINTING CLAIMS. ........................................................ 19

A. The District Court Identified A Potentially Triable Constitutional Claim, Not Clearly

Established Law. .................................................................................. 20

B. No Clearly Established Law Placed The Constitutionality Of The Firearm Display

Beyond Debate. .................................................................................. 21

IV. THE FAILURE-TO-INTERVENE CLAIMS FAIL AS A MATTER OF LAW. ............. 23

A. No Clearly Established Constitutional Violation Existed. .......................................... 24

B. Accepting The District Court's Timing Findings, No Realistic Opportunity To

Intervene Existed. ................................................................................. 25

C. An Officer Cannot Intervene In His Or Her Own Constitutional Violation. ............... 27

V. WISCONSIN IMMUNITY BARS CUYPERS' MALICIOUS-PROSECUTION CLAIM.

.................................................................................................... 27

A. The Decision Whether To Issue Charges Is A Discretionary Law-Enforcement

Function Protected By Wis. Stat. § 893.80(4). ..................................................... 28

B. The District Court Improperly Conflated Probable Cause With The Ultimate Ability

To Convict. ....................................................................................... 30

C. Officers Acting In The Judicial Process Enjoy Absolute Immunity Regardless Of

Alleged Malice. .................................................................................. 33

D. Brown And Gaard Did Not Initiate The Prosecution As A Matter Of Law..................... 34

CONCLUSION.......................................................................................................... 35

CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g), FRAP

RULE 32(c)................................................................................................................. 38

CERTIFICATE OF SERVICE ................................................................................... 39

CIRCUIT RULE 30(d) STATEMENT ....................................................................... 40

REQUIRED SHORT APPENDIX TABLE OF CONTENTS....................................... 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Sangamon County*,
705 F.3d 706 (7th Cir. 2013) .................................................. 3, 6, 7, 13, 15, 16, 18

*Abdullahi v. City of Madison*,
423 F.3d 763 (7th Cir. 2005) .................................................................. 26, 22

*Anderson v. Branen*,
17 F.3d 552, 556 (2nd Cir. 1994).................................................................. 23

*Anderson v. Creighton*,
483 U.S. 635 (1987) ......................................................................................... 9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................................................................................... 19

*Baird v. Renbarger*,
576 F.3d 340 (7th Cir. 2009) .................................................................... 21, 22

*Barillari v. City of Milwaukee*,
194 Wis. 2d 247, 533 N.W.2d 759 (1995) ...................................................... 29

*Behrens v. Pelletier*,
516 U.S. 299 (1996) ....................................................................................... 20

*Bromund v. Holt*,
24 Wis. 2d 336, 129 N.W.2d 149 (1964)................................................... 30, 33

*Brosseau v. Haugen*,
543 U.S. 194 (2004) ....................................................................................... 10

*City & Cnty. of San Francisco v. Sheehan*,
575 U.S. 600 (2015) ......................................................................................... 9

*City of Tahlequah v. Bond*,
595 U.S. 12–13 (2021) .................................................................................... 21

*Cyrus v. Town of Mukwonago*,
624 F.3d 856 (7th Cir. 2010). (R. 56 ) ........................................................... 13

*D.C. v. Wesby*,
583 U.S. 48, 138 S. Ct. 577 (2018) ................................................................ 20

*Dockery v. Blackburn*,
911 F.3d 458 (7th Cir. 2018) .................................................................... 13, 14

*Doxtator v. O'Brien*
39 F.4th 852 (7th Cir. 2022)................................................................. 25, 26, 27

*Elder v. Holloway*,
510 U.S. 510 (1994) ......................................................................................... 9

*Elmer v. Chicago & N.W. Ry. Co.*,
257 Wis. 228, 43 N.W.2d 244 (1950)............................................................. 34

*Ferguson v. McDonough*,
13 F.4th 574 (7th Cir. 2021)........................................................................... 13

*Flint v. City of Milwaukee,*
    91 F. Supp. 3d 1032 (E.D. Wis. 2015) ...................................................... 27

*Graham v. Connor,*
    490 U.S. 386 (1989) ................................................................ 12, 15, 19

*Harer v. Casey,*
    962 F.3d 299 (7th Cir. 2020) ................................................................ 2

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ...................................................................... 9, 24

*Henes v. Morrissey*
    194 Wis. 2d 338, 533 N.W.2d 802 (1995) .......................................... 31, 32

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ...................................................................... 10, 17

*Hunter v. Bryant,*
    502 U.S. 224 (1991) .......................................................................... 9

*Jacobs v. City of Chicago,*
    215 F.3d 758 (7th Cir. 2000) ........................................................ 21, 22

*Jones v. Wilhelm,*
    425 F.3d 455 (7th Cir. 2005) .............................................................. 1

*Kisela v. Hughes,*
    584 U.S. 100, 138 S. Ct. 1148, 200 L. Ed. 2d 449 (2018) ................... 11, 21

*Leaf v. Shelnutt,*
    400 F.3d 1070 (7th Cir. 2005) ............................................................. 2

*Leiser v. Kloth,*
    933 F.3d 696 (7th Cir. 2019) ............................................................. 17

*Lister v. Bd. of Regents,*
    72 Wis. 2d 282, 240 N.W.2d 610 (1976) .............................................. 28

*Lojuk v. Johnson,*
    770 F.2d 619 (7th Cir. 1985) ............................................................. 11

*Loudermilk v. Best Pallet Co., LLC,*
    636 F.3d 312 (7th Cir. 2011) ............................................................. 19

*Lovett v. Herbert,*
    907 F.3d 986 (7th Cir. 2018) .............................................................. 2

*Malley v. Briggs,*
    475 U.S. 335 (1986) ........................................................................ 10

*McDonald v. Haskins,*
    966 F.2d 292 (7th Cir. 1992). (R. 56 ) ............................................ 21, 22

*Miller v. Gonzalez,*
    761 F.3d 822 (7th Cir. 2014) ............................................................. 23

*Milwaukee Metro. Sewerage Dist. v. City of Milwaukee,*
    277 Wis. 2d 635 (2005) .................................................................... 28

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ...................................................................... 1, 20

*Montgomery v. American Airlines, Inc.,*
    626 F.3d 382 (7th Cir. 2010) ............................................................. 19

*Mullenix v. Luna,*
577 U.S. 7 .................................................................................. 12, 16

*Pearson v. Callahan,*
555 U.S. 223 (2009) ......................................................................... 20

*Estate of Perry v. Wenzel*
872 F. 3d 439 (7th Cir. 2017) ......................................................... 28

*Plumhoff v. Rickard,*
572 U.S. 765, 134 S. Ct. 2012 (2014) .......................................... 10, 13

*Pollock v. Vilter Manufacturing Corp.,*
23 Wis. 2d 29, 126 N.W.2d 602 (1964) .......................................... 34

*Robinson v. City of Milwaukee,*
No. 24-CV-264-JPS-JPS, 2026 WL 836940 (E.D. Wis. Mar. 26, 2026) ............... 25

*Sain v. Wood,*
512 F.3d 886 (7th Cir. 2008) ............................................................. 2

*Saucier v. Katz,*
533 U.S. 194 (2001) ........................................................................... 1

*Schlessinger v. Salimes,*
100 F.3d 519 (7th Cir. 1996) ........................................................... 10

*Scott v. Harris,*
550 U.S. 372 (2007) ........................................................................... 4

*Scott v. Savers Property & Casualty Insurance Co.,*
2003 WI 60, 262 Wis. 2d 127, 663 N.W.2d 715 ............................... 30

*Sheridan v. City of Janesville,*
164 Wis. 2d 420, 474 N.W.2d 799 (Ct. App. 1991) ......................... 29

*Smith v. Finkley,*
10 F.4th 725 (7th Cir. 2021) ........................................................... 12

*Estate of Starks v. Enyart,*
5 F.3d 230 (7th Cir. 1993) ............................................................... 10

*State v. Hamilton*
120 Wis. 2d 532, 356 N.W.2d 169 (1984) .................................... 32, 33

*Washington v. Haupert,*
481 F.3d 543 (7th Cir. 2007) ............................................................. 3

*White v. Pauly,*
580 U.S. 73, 137 S. Ct. 548 (2017) ................................................. 12

*Willow Creek Ranch, L.L.C. v. Town of Shelby,*
2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693 ............................... 30

*Wilson v. Layne,*
526 U.S. 603 (1999) ........................................................................... 9

*Yang v. Hardin,*
37 F.3d 282 (7th Cir. 1994) ......................................................... 23, 24

*Ybarra v. City of Chi.,*
946 F.3d 975 (7th Cir. 2020) ............................................................. 3

## Statutes

28 U.S.C. § 1291..................................................................................................... 1
28 U.S.C. §§ 1331 and 1343................................................................................. 1
42 U.S.C. § 1983................................................................................................ 1, 23
Wisconsin Stat. § 893.80(4) ....................................... 3, 8, 28, 29, 30, 33, 36

## Other Authorities

Fourth Amendment ...............................................2, 6, 7, 15, 16, 18, 21, 22, 23, 24, 35
Fed. R. App. P. 32(a)(5).................................................................................... 38
Fed. R. App. P. 32(a)(6).................................................................................... 38
Fed. R. App. P. 32(a)(7)(B)............................................................................... 38
Fed. R. Civ. P. 56(a) .......................................................................................... 3
FRAP RULE 32(a)(7) ......................................................................................... 38
FRAP RULE 32(g) .............................................................................................. 38
Rule 30(a) and (b)............................................................................................... 40
RULE 30(d) ......................................................................................................... 40
Rule 32 ................................................................................................................ 38
RULE 32(c)........................................................................................................... 38

**JURISTICTIONAL STATEMENT**

The district court possessed jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff Ian Cuypers asserted claims under 42 U.S.C. § 1983. (R. 1).

On February 9, 2026, the district court entered an order granting Cuypers motion for partial summary judgment on his excessive-force claim against Officer Gaard and denying Defendants' motion for summary judgment based upon qualified immunity. (R. 56). The district court also denied qualified immunity on Cuypers' firearm-pointing and failure-to-intervene claims. *Id.*

This Court possesses jurisdiction under 28 U.S.C. § 1291. The denial of qualified immunity is immediately appealable under the collateral-order doctrine. *Mitchell v. Forsyth*, 472 U.S. 511, 526-30 (1985). A district court's denial of qualified immunity, to the extent it turns on an issue of law, is considered an immediately appealable "final decision." *Id.* at 524-30. The reason is that qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526. Consequently, if discovery does not reveal a genuine issue of material fact regarding the availability of qualified immunity, then the defendant public official is entitled to summary judgment on the issue. *Id.*

Put differently, a motion for summary judgment is a defendant's "final opportunity to secure the full benefit of qualified immunity." *Jones v. Wilhelm*, 425 F.3d 455, 466 (7th Cir. 2005). For this reason, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

On appeal, this Court can take the undisputed historical facts found by the district court and as proposed by the parties, drawing all reasonable inferences in favor of the nonmovant, as given, *Leaf v. Shelnutt*, 400 F.3d 1070, 1078 (7th Cir. 2005), and review the district court's application of the law to those facts, *Sain v. Wood*, 512 F.3d 886, 890-91 (7th Cir. 2008). *See also Harer v. Casey*, 962 F.3d 299, 305 (7th Cir. 2020) ("In this appeal, the [defendants] accept the facts and reasonable inferences favorable to [plaintiffs] for purposes of the qualified immunity inquiry at this stage. They simply contend that those facts and inferences do not establish a violation of a clearly established constitutional right.") (internal quotation marks and citations omitted); *Lovett v. Herbert*, 907 F.3d 986, 991 (7th Cir. 2018) ("In order to present such an issue for appeal, the defendant may accept, for purposes of the qualified immunity inquiry, the facts and reasonable inferences favorable to the opponent of immunity, and argue that those facts fail to show a violation of clearly established law.") (internal quotation marks and citation omitted).

## STATEMENT OF THE ISSUES

1. Whether Officer Taylor Gaard is entitled to qualified immunity where no Supreme Court or Seventh Circuit precedent clearly established that deploying a taser under the circumstances presented violated the Fourth Amendment.

2. Whether the district court erred by granting Cuypers partial summary judgment on his excessive-force claim by:

   a. evaluating the use of force based primarily on the moments immediately preceding the taser deployment rather than the totality of the circumstances as required by *Barnes v. Felix*; and

2

b. effectively treating *Abbott v. Sangamon County* and related cases as establishing a categorical prohibition on taser use whenever a suspect is not actively resisting arrest.

3. Whether Officers Justin Taylor and Taylor Gaard are entitled to qualified immunity on Cuypers' firearm-pointing claims because no clearly established precedent squarely governs the circumstances presented here.

4. Whether Officers Justin Taylor and Matthew Brown are entitled to qualified immunity on Cuypers' failure-to-intervene claims.

5. Whether Wisconsin Stat. § 893.80(4) bars Cuypers' malicious-prosecution claim because the challenged charging decision involved the exercise of discretionary law-enforcement judgment, absolute immunity applies, and Officers Gaard and Brown did not initiate the prosecution.

**STANDARD OF REVIEW**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court reviews the district court's denial of summary judgment on Defendants' qualified immunity defense *de novo*. See *Ybarra v. City of Chi.*, 946 F.3d 975, 978 (7th Cir. 2020). The evidence and all inferences that reasonably can be drawn from the evidence are construed in the light most favorable to Cuypers. *Washington v. Haupert*, 481 F.3d 543, 547 (7th Cir. 2007). "The appellate court is not required to accept the facts as described by the district court." *Id.* at 549 n. 2 "[W]here the appellants are not asking the court to resolve factual disputes or determine whether the evidence is sufficient, it is appropriate for this court to look beyond the

factual account of the district court to all undisputed evidence." *Id*. The appellate court is not bound by the district court's ruling that the evidence supports a particular finding of fact. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

**STATEMENT OF THE CASE**

In its summary judgment decision, the district court drew from the undisputed facts proposed by the parties. (R. 56 at 2). On February 28, 2024, Officer Justin Taylor observed Plaintiff Ian Cuypers drive the wrong way down a one-way street in Superior, Wisconsin. (R. 56 at 2). The district court found that Taylor initiated a traffic stop and that Cuypers immediately pulled over. *Id.* The district court further found that Taylor observed Cuypers reaching around inside the vehicle before backup arrived. *Id.*

Additional officers responded to the scene, including Officer Taylor Gaard and Sergeant Matthew Brown. *Id.* After the responding officers arrived, Taylor told the other officers that Cuypers had been "digging around a lot in the passenger's side, in the center console, and everywhere else." (R. 56 at 2-3; R. 32-4: Taylor body cam 2:13–2:18). Taylor and Gaard then drew their firearms and pointed them at Cuypers' vehicle while officers conducted what the district court described as a high-risk stop. *Id.* at 1, 3.

Officers directed Cuypers to show his hands, open the vehicle door, exit the vehicle, turn away from the officers, place his hands on his head, interlace his fingers, and walk backward toward the officers. (R. 56 at 3). The district court found that Cuypers substantially complied with those commands but also found that he periodically removed his hands from his head, turned his head toward the officers,

4

asked questions regarding what was occurring, and did not immediately comply with commands directing him to kneel on his left knee. (R. 56 at 3-4). At one point, he removed his hands from his head and threw a bandana that he was wearing on his head to the ground. (R. 56 at 3; R. 32-4: Taylor body cam 22:19:11-13).

Approximately fifteen seconds elapsed between the time officers first instructed Cuypers to kneel, and the deployment of Officer Gaard's taser. (R. 56 at 3-4; R. 32-3: Taylor dash cam 4:15–4:30). During that period, Brown instructed Cuypers multiple times to get down on his left knee. *Id.* Officer Gaard warned Cuypers that he would be tased if he did not comply. *Id.* Immediately following a third command to kneel, Officer Gaard deployed her taser. *Id.* The taser struck Cuypers in the back and legs, causing him to fall to the ground. *Id.* The officers then handcuffed Cuypers. *Id.*

The officers placed Cuypers against a police vehicle so that Gaard could remove the taser prongs from his body. Gaard told Cuypers that he was in this position because he wasn't following the officers' commands. (R. 56 at 4; R. 40-8: Gaard body cam 5:50–6:00).

The officers arrested Cuypers, and Taylor issued him two citations for violating civil ordinances: one for driving the wrong way down a one-way street and one for resisting or obstructing an officer. (R. 56 at 4). In July 2024, Cuypers was acquitted of the obstruction charge after a jury trial. *Id.*

Cuypers subsequently filed this action asserting excessive-force, failure-to-intervene, malicious-prosecution, intentional-infliction-of-emotional-distress, and

indemnification claims. (R. 1). The district court granted Cuypers partial summary judgment on his taser claim, concluding that Officer Gaard violated clearly established law because Cuypers was not actively resisting and did not pose a threat. (R. 56 at 9-11, 21). The district court denied qualified immunity on Cuypers' remaining Fourth Amendment claims and denied Defendants' motion for summary judgment. (R. 56 at 21-22).

## SUMMARY OF ARGUMENT

This interlocutory appeal presents legal questions concerning the scope of qualified immunity, the proper application of recent Supreme Court precedent governing excessive-force claims, and the reach of Wisconsin's discretionary-immunity doctrine. Accepting the district court's factual findings for purposes of appeal, the district court nevertheless erred in concluding that Cuypers established a violation of clearly established law and in granting partial summary judgment in Cuypers' favor.

First, Officer Taylor Gaard is entitled to qualified immunity on Cuypers' taser claim. The district court relied on broad propositions derived from *Abbott* and related cases, but neither the Supreme Court nor this Court has clearly established that deploying a taser under the circumstances presented here violates the Fourth Amendment. The Supreme Court has repeatedly instructed courts not to define clearly established law at a high level of generality, particularly in excessive-force cases. Because no precedent squarely governed the circumstances confronting Officer Gaard on February 28, 2024, qualified immunity applies.

Second, the district court erred by granting Cuypers partial summary judgment on the constitutional-violation prong of his excessive-force claim. Even accepting the district court's factual findings, the court's analysis improperly focused on the moments immediately preceding the taser deployment rather than the totality of the encounter, contrary to the Supreme Court's recent decision in *Barnes v. Felix*. The district court also effectively converted *Abbott* into a categorical rule prohibiting taser use whenever a suspect is not actively resisting. Neither *Barnes*, *Graham*, nor *Abbott* supports such an approach. At minimum, the constitutional question remained sufficiently debatable to preclude judgment as a matter of law in Cuypers' favor.

Third, Officers Taylor and Gaard are entitled to qualified immunity on Cuypers' firearm-pointing claims. Even accepting the district court's findings, the precedents involve different timing and posture (e.g., after control or identification clarity), and do not clearly establish that display during an in-progress extraction at night is unconstitutional. Qualified immunity therefore applies.

Fourth, Cuypers' failure-to-intervene claims fail as a matter of law. A failure-to-intervene claim requires both knowledge of an ongoing constitutional violation and a realistic opportunity to prevent it. Because no clearly established law would have informed Officers Taylor or Brown that the challenged conduct was unconstitutional, Cuypers cannot satisfy the knowledge requirement. In addition, the district court's own factual findings demonstrate that the relevant events unfolded within seconds during an active detention, leaving no realistic opportunity for meaningful intervention.

7

Finally, Wisconsin's discretionary-immunity doctrine bars Cuypers' malicious-prosecution claim. The challenged conduct—the decision whether to issue and pursue an obstructing citation—involved quintessential discretionary law-enforcement judgment protected by Wis. Stat. § 893.80(4). The district court improperly treated evidence allegedly bearing on malice as sufficient to defeat immunity. Even accepting the district court's factual inferences, immunity applies because the nature of the challenged conduct remains discretionary. Moreover, Brown and Gaard did not initiate the prosecution as a matter of Wisconsin law, and the district court conflated the ultimate merits of an obstruction charge with the substantially lower standard governing probable-cause determinations.

For these reasons, the district court's denial of qualified immunity should be reversed, the grant of partial summary judgment to Cuypers should be vacated, and judgment should be entered in Defendants' favor on immunity grounds.

**ARGUMENT**

### I. OFFICER GAARD IS ENTITLED TO QUALIFIED IMMUNITY BEAUSE NO CLEARLY ESTABLISHED LAW PROHIBITED HER CONDUCT UNDER THE CIRCUMSTANCES PRESENTED.

The United States Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage of litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The Court has explained that "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Government officials possess qualified immunity from suit "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

There is generally a two-part test in determining whether qualified immunity should be granted to a governmental actor: (1) whether the plaintiff has established a deprivation of a constitutional right; and, if so, (2) whether the right was clearly established at the time of the alleged violation. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). The question of whether immunity attaches is a question of law. *Elder v. Holloway*, 510 U.S. 510, 516 (1994). If qualified immunity applies to an officer's

conduct, "the officer should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). It is plaintiff's burden to show that the law was "clearly established" at the time of the incident. *See Schlessinger v. Salimes*, 100 F.3d 519, 523 (7th Cir. 1996).

Law enforcement officers are entitled to qualified immunity for their actions if "a reasonable officer could have believed [that the action taken was] lawful, in light of clearly established law and the information the officers possessed." *Estate of Starks v. Enyart*, 5 F.3d 230, 233 (7th Cir. 1993). To show that a law was clearly established, a plaintiff must offer either a closely analogous case or evidence that the defendant's conduct was patently violative of a constitutional right that reasonable officials would know without guidance from a court. See *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

For a right to be clearly established, existing precedent at the time of the incident in question must have defined the "contours" of the right in a "sufficiently definite" manner that "any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79, 134 S. Ct. 2012 (2014). The law must have placed the constitutional question "beyond debate." *Id.* at 779.

Otherwise, that is, "if officers of reasonable competence could disagree," qualified immunity applies. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In this way, qualified immunity "leaves 'ample room for mistaken judgments' by police officers," (*id.* at 343) and protects all but the "plainly incompetent and those who knowingly violate the law." *Sheehan* at 611 (internal quotation marks and citation omitted). In addition,

the Seventh Circuit requires "caselaw which clearly and consistently recognizes the constitutional right." *Lojuk v. Johnson*, 770 F.2d 619, 629 (7th Cir. 1985) (internal quotations and citations omitted) (finding that one supporting circuit court case, one supporting district court case and several other distantly related cases are insufficient to clearly establish a constitutional right).

Under this case law, to rebut Officer Gaard's assertion of qualified immunity, Cuypers must establish that the unconstitutionality of deploying her taser on Cuypers' lower back and legs was clearly established as of February 28, 2024. Cuypers failed to submit any caselaw in the context of his summary judgment briefing which presented a clearly-established constitutional right that governed Officer Gaard's actions. The district court failed in this regard as well. Instead, the court relied upon the general proposition that officers may not deploy a taser against a nonviolent suspect who is not actively resisting arrest. (R. 56 at 9-11). That formulation is too general to satisfy modern qualified-immunity standards.

**A. Supreme Court Precedent Requires Highly Particularized Authority.**

The Supreme Court has cautioned courts against reasoning from broad principles when considering whether a right is clearly established for qualified immunity purposes. See *Kisela v. Hughes*, 584 U.S. 100, 103, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018). Especially in excessive force cases, where "it is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts," correctional officers are entitled to qualified immunity "unless existing precedent 'squarely governs' the specific facts at issue." *Id.* (emphasis

11

added) (quoting *Mullenix v. Luna,* 577 U.S. 7, 11-12; 136 S.Ct. 305 (2015) 577 U.S. at 11–12); see also *Smith v. Finkley*, 10 F.4th 725, 742 (7th Cir. 2021) (observing that specificity is "particularly important" in excessive force cases, "as it can be difficult to determine how the law will apply to a factual situation").

Use of excessive force is an area of the law "in which the result depends very much on the facts of each case," and thus police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Id.*, at 13 (internal quotation marks omitted and emphasis deleted). Precedent involving similar facts can help move a case beyond the otherwise "hazy border between excessive and acceptable force" and thereby provide an officer notice that a specific use of force is unlawful. *Id.*, at 18 (internal quotation marks omitted).

"Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers." *White v. Pauly,* 580 U.S. 73, 79, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted). But the general rules set forth in "*Garner* and *Graham* do not by themselves create clearly established law outside an 'obvious case.' " *Id.* at 80. Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness. An officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood

12

that he was violating it." *Plumhoff v. Rickard,* 572 U.S. 765, 778–779, 134 S.Ct. 2012, 2023 (2014).

The district court's analysis conflicts with these decisions. The court reasoned that it was clearly established that officers may not use a taser against a nonviolent suspect who is not actively resisting arrest. (R. 56 at 11). But that formulation merely restates a general constitutional principle. It does not identify precedent involving a nighttime traffic stop, a vehicle extraction sequence, multiple responding officers, repeated commands directing a suspect to assume a control position, and deployment of force before officers could safely complete the detention. The Supreme Court has repeatedly held that such general propositions are insufficient to defeat qualified immunity.

**B. *Abbott*, *Dockery*, *Ferguson*, And *Cyrus* Do Not Squarely Govern This Encounter.**

Consistent with the Supreme Court's emphasis on specificity in excessive-force qualified-immunity cases, the precedents discussed by the district court do not address this encounter's particular features. The district court principally relied upon *Abbott v. Sangamon County*, 705 F.3d 706 (7th Cir. 2013), *Dockery v. Blackburn*, 911 F.3d 458 (7th Cir. 2018), *Ferguson v. McDonough*, 13 F.4th 574 (7th Cir. 2021), and *Cyrus v. Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010). (R. 56 at 7). None of those cases presented the circumstances at issue here.

*Abbott* involved a domestic-disturbance investigation where the plaintiff verbally questioned officers, refused to place her hands behind her back, and was repeatedly tased during an attempted arrest. 705 F.3d at 710–13. The court emphasized that the

plaintiff was suspected only of minor offenses and was not posing a threat at the time force was used. *Id.* at 732. *Dockery* likewise involved the use of force against an individual who had already been physically restrained and no longer posed a meaningful threat. 911 F.3d at 467–69. In *Ferguson*, officers repeatedly tased an individual who was already on the ground and substantially incapacitated. *Id.* at 583–84. And in *Cyrus*, officers deployed a taser against an obese and medically compromised individual during a welfare-related encounter. 624 F.3d at 858–61.

Those decisions involved materially different posture—force after restraint or incapacitation—whereas here officers were still attempting to complete the extraction and detention. (R. 56 at 1-4). Cuypers had not yet been handcuffed, secured, or physically controlled. (R. 56 at 4). The officers had not yet approached and taken custody of him. *Id.* Instead, they were directing him through a series of commands designed to place him in a position where officers could safely complete the detention. (R. 56 at 1-4). On the clearly established prong, those factual differences matter.

Whether those distinctions ultimately justify the use of force is not the question before this Court. The relevant inquiry is whether existing precedent clearly established that force was unlawful under these specific circumstances. None of the cases relied upon by the district court answers that question. At a minimum, reasonable officers could disagree regarding whether those precedents governed this encounter.

### C. The District Court Improperly Converted *Abbott* Into A Categorical Rule.

The district court's analysis rests on the proposition that "it is unreasonable to deploy a taser against a nonviolent suspect who is not actively resisting or otherwise posing a threat." (R. 56 at 11). From that premise, the court concluded that Officer Gaard violated clearly established law. *Id.*

That reasoning effectively transforms *Abbott* and its progeny into a categorical rule prohibiting taser use whenever a suspect is suspected of only minor offenses and is not actively resisting arrest. *Abbott* does not establish such a rule. On the contrary, *Abbott* repeatedly emphasized that excessive-force claims require a fact-specific inquiry examining the totality of the circumstances. *Id.* at 724–32. The court considered the severity of the offense, the degree of resistance, the threat posed to officers, and the rapidly evolving circumstances confronting law enforcement. *Id.* *Abbott* did not announce a per se rule that the absence of active resistance automatically renders taser use unconstitutional. Rather, *Abbott* requires a fact-specific totality assessment and that, even assuming Cuypers' facts, the particular combination of a high-risk stop, sequence of commands, and seconds-long timeline means no case places the unconstitutionality "beyond debate."

The Supreme Court has repeatedly cautioned against categorical rules in Fourth Amendment jurisprudence. *Graham* itself requires a totality-of-the-circumstances inquiry, not mechanical application of bright-line rules. *Graham v. Connor*, 490 U.S. 386, 396 (1989). More recently, *Barnes v. Felix,* reiterated that courts must evaluate

all relevant circumstances surrounding the encounter rather than reducing reasonableness to a single factor. 605 U.S. 73, 82, 145 S. Ct. 1353, 1359-61 (2025).

The district court's approach cannot be reconciled with those principles. Under the court's reasoning, once it was determined that Cuypers was not actively resisting arrest, the constitutional analysis was effectively over. But neither *Abbott* nor any other Seventh Circuit decision establishes such a categorical rule.

### D. At Minimum, The Law Did Not Clearly Establish That This Conduct Was Unconstitutional.

The Supreme Court has emphasized that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix* at 12. Even accepting the district court's factual findings, this case does not fall within that narrow category.

The district court found that Cuypers repeatedly questioned the officers, periodically removed his hands from his head, turned toward the officers, and failed to immediately comply with commands directing him to kneel before the taser was used. (R. 56 at 1-4). The court also acknowledged that the entire encounter unfolded rapidly and that only seconds elapsed between the commands to kneel and deployment of the taser. *Id.*

No controlling precedent clearly established that deploying a taser during those circumstances violated the Fourth Amendment. On the contrary, the existing case law occupies a far different factual landscape. Because no precedent squarely governed the specific circumstances confronting Officer Gaard, she is entitled to qualified immunity.

16

**E. Officer Gaard's Conduct Was Not Obviously Unconstitutional.**

Nor is this one of the "rare cases" in which the unlawfulness of an officer's conduct would have been apparent to every reasonable officer even without closely analogous precedent. See *Leiser v. Kloth*, 933 F.3d 696, 702 (7th Cir. 2019).

As *Leiser* explained, the Supreme Court has recognized a narrow category of cases in which conduct is so obviously unconstitutional that prior precedent is unnecessary to provide fair warning. *Id.* The paradigmatic example is *Hope v. Pelzer,* where prison guards handcuffed an inmate to a hitching post for seven hours, exposed him to the sun, deprived him of water, and denied him bathroom breaks. 536 U.S. 730, 738–46 (2002).

At most, Cuypers identifies authority from which competing inferences might be drawn regarding the legality of Officer Gaard's conduct. That is insufficient to invoke the narrow "obvious case" exception recognized in *Hope* and *Leiser*. Even assuming a constitutional violation occurred, the unlawfulness of Officer Gaard's conduct was not so apparent that every reasonable officer would have understood it to be unconstitutional without further guidance from existing precedent.

## II. THE DISTRICT COURT ERRED BY GRANTING CUYPERS PARTIAL SUMMARY JUDGMENT ON THE CONSTITUTIONAL-VIOLATION PRONG.

Even apart from qualified immunity, the district court erred by granting Cuypers partial summary judgment on his excessive-force claim. Defendants recognize the limited scope of this interlocutory appeal. For purposes of appellate review, Defendants accept the factual findings identified by the district court and do not ask

this Court to revisit the district court's interpretation of the video evidence. The question presented is a legal one: whether those facts entitled Cuypers to judgment as a matter of law. They did not.

**A. *Barnes* Requires Consideration Of The Entire Encounter.**

The district court's analysis focused primarily on the moments immediately preceding the taser deployment. (R. 56 at 8). The court emphasized that Cuypers was not actively resisting, did not appear threatening, and had substantially complied with many of the officers' commands at the instant force was used. *Id.*

In *Barnes v. Felix*, the Court explained that Fourth Amendment reasonableness must be assessed based upon the totality of the circumstances and not by isolating a single moment immediately preceding the use of force. 145 S. Ct. 1353, 1360–61 (2025). The district court's analysis effectively reduced the constitutional inquiry to a snapshot of the final seconds before force was used. (R. 56 at 8-10). *Barnes* makes clear that the Fourth Amendment requires a broader assessment.

Even considering the entire encounter described by the district court—including pre-exit movements, the high-risk extraction protocol, and the fifteen-second kneel sequence—no decision clearly establishes that a single taser deployment here violated the Fourth Amendment.

**B. The District Court's Own Analysis Demonstrates That Cuypers Was Not Entitled To Judgment As A Matter Of Law.**

The court devoted substantial analysis to *Abbott*, *Cyrus*, *Dockery*, *Ferguson*, and other excessive-force decisions before concluding that Officer Gaard's conduct violated the Fourth Amendment. (R. 56 at 6-7). That detailed analysis underscores

that the constitutional question presented here is highly fact-specific and requires application of multiple competing considerations.

Yet summary judgment in Cuypers' favor was appropriate only if the district court could conclude that, under the accepted facts, no reasonable officer could view the encounter differently and no reasonable jury could find the force objectively reasonable. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

Even accepting the district court's factual findings, the constitutional question presented by this encounter is not so one-sided. The officers were engaged in an ongoing detention, had not yet secured Cuypers, and were attempting to complete a coordinated vehicle-extraction process. (R. 56 at 2-4). Whether those circumstances justified force is a question that requires balancing competing considerations under *Graham* and *Barnes*.

At minimum, the district court's own analysis demonstrates that the constitutional question was sufficiently debatable to preclude judgment as a matter of law in Cuypers' favor. Accordingly, the district court's grant of partial summary judgment should be reversed.

### III. OFFICERS TAYLOR AND GAARD ARE ENTITLED TO QUALIFIED IMMUNITY ON CUYPERS' FIREARM-POINTING CLAIMS.

The district court denied qualified immunity because, accepting Cuypers' version of events, a reasonable jury could find that Taylor and Gaard pointed their guns at a compliant individual who presented no threat of danger and had done nothing other

19

than turn the wrong way down a one-way street. (R. 56 at 13). But even if that factual conclusion is accepted, qualified immunity still applies unless existing precedent placed the constitutional question beyond debate.

Before turning to the merits, Defendants emphasize the limited nature of this appeal. Defendants do not challenge the district court's factual findings for purposes of appellate review. Nor do Defendants ask this Court to revisit the district court's interpretation of the video evidence. Instead, Defendants accept the facts identified by the district court and present a purely legal question: whether those facts establish a violation of clearly established law. Such questions fall squarely within this Court's interlocutory jurisdiction. See *Mitchell* at 528; *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996).

Even accepting every factual finding made by the district court, Defendants are entitled to qualified immunity because no precedent placed the constitutional question beyond debate.

## A. The District Court Identified A Potentially Triable Constitutional Claim, Not Clearly Established Law.

The Supreme Court has repeatedly emphasized that the existence of a constitutional violation does not answer the separate question whether the unlawfulness of the conduct was clearly established. See *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). It is not enough that the rule is suggested by then-existing precedent. *D.C. v. Wesby*, 583 U.S. 48, 63, 138 S. Ct. 577, 590 (2018). The precedent must be clear enough that every reasonable official would interpret it to establish the

particular rule the plaintiff seeks to apply. *Id.* Otherwise, the rule is not one that "every reasonable official" would know. *Id.*

Accordingly, the question is not whether a jury could conclude that displaying firearms was unreasonable. The question is whether every reasonable officer would have understood that displaying firearms under these particular circumstances violated the Fourth Amendment.

The district court never identified such precedent. Instead, the court relied on broad principles derived from *Baird v. Renbarger*, 576 F.3d 340 (7th Cir. 2009), *Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir. 2000), and *McDonald v. Haskins*, 966 F.2d 292 (7th Cir. 1992). (R. 56 at 11-13). But the Supreme Court has repeatedly rejected reliance on generalized excessive-force principles when conducting the clearly-established-law inquiry. *Kisela v. Hughes*, 584 U.S. 100, 104–05 (2018); *City of Tahlequah v. Bond*, 595 U.S. 12–13 (2021).

The district court's reasoning therefore proves too much. Under that approach, any time a jury could find that a suspect posed no threat, qualified immunity would automatically disappear. That is not the law.

## B. No Clearly Established Law Placed The Constitutionality Of The Firearm Display Beyond Debate.

Even accepting the district court's conclusion that a reasonable jury could find Cuypers was substantially compliant and posed no immediate threat when the officers pointed their firearms, Officers Taylor and Gaard are entitled to qualified immunity because no clearly established law prohibited their conduct.

The district court relied principally on *Baird v. Renbarger, Jacobs v. City of Chicago*, and *McDonald v. Haskins*. But those cases involved materially different circumstances. In *Baird*, an officer pointed a submachine gun at compliant individuals during the execution of a search warrant despite the absence of any indication that the occupants posed a threat. 576 F.3d 340, 344–45 (7th Cir. 2009). In *Jacobs*, officers allegedly held a gun to the plaintiff's head after she had already been secured and no safety concern remained. 215 F.3d 758, 773–74 (7th Cir. 2000). In *McDonald*, an officer allegedly pointed a gun at a nine-year-old child and threatened to pull the trigger. 966 F.2d 292, 295 (7th Cir. 1992).

Those decisions establish that the prolonged or gratuitous display of firearms against individuals who have already been secured and present no apparent safety concern may violate the Fourth Amendment. They do not clearly establish that officers violate the Constitution by briefly displaying firearms during an ongoing nighttime vehicle stop and ensuing detention sequence where, as the district court found, officers had observed the driver repeatedly reach across the vehicle toward the passenger side and rummage through the vehicle's interior during the stop (R. 56 at 2-4), even if the suspect is later determined to have been substantially compliant and not to have posed an immediate threat when the firearms were displayed.

That distinction is critical. Even accepting the district court's factual findings, the firearm display here occurred during an in-progress vehicle extraction and detention, not after the encounter had concluded or after all law-enforcement objectives had been accomplished. None of the cases relied upon by the district court clearly

establishes that the brief display of firearms during such an ongoing detention violates the Fourth Amendment, even where the suspect is substantially compliant and ultimately found not to pose an immediate threat.

At most, the cases cited by Cuypers establish general principles governing the use of firearms during police encounters. Because no Supreme Court or Seventh Circuit decision placed that question beyond debate, Officers Taylor and Gaard are entitled to qualified immunity on Cuypers' firearm-pointing claims.

## IV. THE FAILURE-TO-INTERVENE CLAIMS FAIL AS A MATTER OF LAW.

Cuypers' failure-to-intervene claims against Officers Taylor and Brown likewise cannot survive. Under certain limited circumstances, an officer's failure to intervene renders the officer culpable under § 1983. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). To establish liability for failure to intervene against any of the other officers present, Cuypers must show that each had reason to know: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Id.* (italics in original), citing *Anderson v. Branen*, 17 F.3d 552, 556 (2nd Cir. 1994). The court has further explained that "[a] 'realistic opportunity' means a chance to warn the officer using excessive force to stop." *See Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014). Neither requirement is satisfied here.

**A. No Clearly Established Constitutional Violation Existed.**

The failure-to-intervene claims fail for a more fundamental reason: no clearly established law would have informed Officers Taylor or Brown that Officer Gaard's conduct violated the Fourth Amendment. Embedded within every failure-to-intervene claim is a knowledge requirement: the officer must have reason to recognize that another officer is infringing a citizen's constitutional rights. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). That requirement cannot be satisfied here.

As discussed above, existing precedent did not clearly establish that Officer Gaard's deployment of a taser or the officers' display of firearms violated the Fourth Amendment. At minimum, reasonable officers could disagree regarding the legality of the challenged conduct. That conclusion is dispositive of Cuypers' failure-to-intervene theory. An officer cannot be liable for failing to prevent conduct that the law did not clearly identify as unconstitutional. As the Supreme Court explained in *Harlow v. Fitzgerald*, "[i]f the law at that time was not clearly established, an official could not ... fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. 800, 818 (1982). The same logic applies here. If Officer Gaard herself is entitled to qualified immunity because the constitutional question was subject to reasonable debate, then Officers Taylor and Brown necessarily cannot be charged with knowing that Officer Gaard was committing a constitutional violation requiring immediate intervention.

Put differently, Cuypers' theory would impose a more demanding constitutional obligation on the observing officers than on the officer who actually used force. Officer

Gaard would be entitled to qualified immunity because reasonable officers could disagree about the legality of her actions, yet Officers Taylor and Brown would somehow be liable for failing to recognize instantly that those same actions were unconstitutional. Qualified-immunity doctrine does not permit such an incongruous result.

Courts have therefore recognized that where the underlying constitutional violation is not clearly established, failure-to-intervene claims fail as well. See *Doxtator* at 869–70; *Robinson v. City of Milwaukee*, No. 24-CV-264-JPS-JPS, 2026 WL 836940, at *20 (E.D. Wis. Mar. 26, 2026). Because no clearly established law would have alerted Officers Taylor or Brown that Officer Gaard's conduct violated the Constitution, Cuypers cannot establish the requisite "reason to know" element of a failure-to-intervene claim. Summary judgment should therefore have been granted in their favor.

## B. Accepting The District Court's Timing Findings, No Realistic Opportunity To Intervene Existed.

Cuypers' failure-to-intervene claim independently fails because the district court's own factual findings establish that Officers Taylor and Brown lacked a realistic opportunity to prevent the challenged use of force. The district court found that approximately fifteen seconds elapsed between the officers' initial command that Cuypers kneel and Officer Gaard's taser deployment. (R.56 at 3-4). The court further found that Officer Gaard deployed the taser *immediately* after issuing a third command directing Cuypers to kneel. *Id.* at 4 (emphasis added). Those facts are insufficient to establish a realistic opportunity for intervention.

The relevant inquiry is not whether another officer was physically present. Rather, the question is whether there was sufficient time to recognize that a constitutional violation was occurring, formulate an objection, communicate that objection, and successfully prevent the use of force before it occurred. *Abdullahi* at 774–75. Indeed, the district court's theory would effectively impose liability whenever one officer issues a warning before using force and another officer is close enough to hear it. That is not the standard.

This Court's decision in *Doxtator v. O'Brien* is instructive. There, this Court rejected failure-to-intervene claims because the officers were simultaneously focused on an evolving and potentially dangerous situation and therefore lacked a realistic opportunity to intervene. *Id.* at 865. This Court explained:

> The deputies were also likely focused on the supposedly armed, and possibly suicidal or homicidal, suspect who seemed to be attempting to escape or attempting to attack the officers towards whom he was rushing. It is therefore wholly unrealistic to expect the deputies to have trained their attention on O'Brien rather than said suspect or any of the other officers who had their guns drawn. Because no reasonable jury could conclude that either Deputy Mleziva or Deputy Winisterfer had a realistic opportunity to intervene, summary judgment on these failure-to-intervene claims was warranted.

*Id.*

The same principle applies here. Even accepting the district court's version of events, Officers Taylor and Brown were not passive observers watching a constitutional violation unfold. (R. 56 at 3-4). They were active participants in an ongoing detention, each performing separate law-enforcement functions including issuing commands while attempting to secure Cuypers and maintain control of the encounter. (R. 56 at 3-4).

Accepting the district court's timeline, the entire sequence unfolded over approximately fifteen seconds during an ongoing detention and culminated *immediately* after Officer Gaard issued a final command. (R. 56 at 3-4). This Court's decisions recognize that such brief and rapidly developing intervals do not ordinarily provide a realistic opportunity to intercede. See *Doxtator* at 865; *Abdullahi* at 774–75.

At a minimum, no clearly established law would have informed Officers Taylor or Brown that the circumstances identified by the district court provided a sufficient opportunity for intervention. The district court therefore erred in allowing the failure-to-intervene claim to proceed.

## C. An Officer Cannot Intervene In His Or Her Own Constitutional Violation.

Cuypers seeks to hold Officers Taylor, Brown, and Gaard liable for failing to intervene in preventing each other from having guns drawn. (R. 7, ¶ 59). The claim fails because an officer "cannot intervene in his own constitutional violation." *Flint v. City of Milwaukee*, 91 F. Supp. 3d 1032, 1063 (E.D. Wis. 2015). Assuming that each was personally involved, they could not be liable for failing to intervene in their own conduct—that is not logical.

## V. WISCONSIN IMMUNITY BARS CUYPERS' MALICIOUS-PROSECUTION CLAIM.

The district court erred in denying summary judgment on Cuypers's malicious-prosecution claim. The challenged conduct—the decision whether to issue and pursue an obstructing citation—is protected by Wisconsin immunity doctrines. Moreover,

even if immunity did not apply, Officers Brown and Gaard did not initiate the prosecution as a matter of law.

**A. The Decision Whether To Issue Charges Is A Discretionary Law-Enforcement Function Protected By Wis. Stat. § 893.80(4).**

The district court denied immunity because it concluded that a jury could infer that Defendants pursued the obstructing citation to justify their use of force rather than because they genuinely believed Cuypers had violated the law. (R. 56 at 19-20). Specifically, the court relied on (1) a post-incident discussion among the officers concerning what charge should be issued and (2) its conclusion that Officer Gaard's use-of-force report described Cuypers' conduct more aggressively than the court believed the video depicted. (R.56 at 19–20). Even accepting those factual inferences, the district court's analysis fails as a matter of law.

Wisconsin's governmental-immunity statute provides that no suit may be brought against governmental officers or employees for acts performed in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions. Wis. Stat. § 893.80(4). Wisconsin courts have long interpreted this protection broadly to encompass discretionary governmental decisions involving the exercise of judgment. *Lister v. Bd. of Regents*, 72 Wis. 2d 282, 300–02, 240 N.W.2d 610 (1976); *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 277 Wis. 2d 635, 672 (2005). "There are four exceptions to this broad doctrine: (1) the performance of ministerial duties; (2) the performance of duties with respect to a 'known danger;' (3) actions involving medical discretion; and (4) actions that are 'malicious, willful, and intentional.'" *Perry* at 462. None of the exceptions apply.

Police officers are routinely required to evaluate conduct, assess facts, determine whether probable cause exists, decide what charge is appropriate, and determine whether enforcement action should be pursued. Wisconsin courts have repeatedly recognized that officers "must continuously use their discretion to set priorities and decide how best to handle specific incidents." *Barillari v. City of Milwaukee*, 194 Wis. 2d 247, 261–62, 533 N.W.2d 759 (1995). Accordingly, discretionary immunity applies to law-enforcement decisions regarding arrests, citations, and charging determinations. See *Sheridan v. City of Janesville*, 164 Wis. 2d 420, 427–28, 474 N.W.2d 799 (Ct. App. 1991).

Here, Cuypers challenges Officer Taylor's decision to issue an obstructing citation following the traffic stop. That decision required the application of legal standards to disputed facts and the exercise of professional judgment. Because the challenged conduct was discretionary, it is immune from suit under § 893.80(4).

The court's reliance on the officers' discussion regarding potential charges illustrates the point. The fact that officers debated available charging options and ultimately elected to proceed by civil citation rather than criminal charge demonstrates the exercise of judgment, not the absence of it. If anything, the discussion cited by the district court confirms that the officers were engaged in the very type of discretionary decision-making that § 893.80(4) was enacted to protect.

The same is true of the court's reliance on Officer Gaard's report. Even assuming the district court correctly interpreted the video and correctly concluded that the report portrayed Cuypers' conduct more aggressively than the video reflects, that

evidence concerns only how Gaard described the encounter after it occurred. It does not alter the discretionary character of the subsequent charging decision.

The district court's analysis effectively assumed that because malicious prosecution requires proof of malice and lack of probable cause, governmental immunity necessarily disappears whenever a plaintiff alleges those elements. Wisconsin law does not support such a categorical rule. See *Bromund* at 341. ("Judicial officers acting in the exercise of their jurisdiction are exempt from civil liability for malicious prosecution irrespective of the existence of malice or corrupt motives.)

If the mere allegation that an officer acted maliciously were sufficient to eliminate immunity, immunity would cease to exist for a substantial category of intentional-tort claims. Wisconsin courts have repeatedly rejected such an approach. Indeed, the Wisconsin Supreme Court has repeatedly applied § 893.80(4) to intentional tort claims where the challenged conduct involved discretionary governmental decision-making. See, e.g., *Scott v. Savers Property & Casualty Insurance Co.*, 2003 WI 60, ¶¶ 24–29, 262 Wis. 2d 127, 663 N.W.2d 715; *Willow Creek Ranch, L.L.C. v. Town of Shelby*, 2000 WI 56, ¶¶ 25–27, 235 Wis. 2d 409, 611 N.W.2d 693. The district court therefore erred by allowing the nature of Cuypers' cause of action to substitute for the required immunity analysis.

## B. The District Court Improperly Conflated Probable Cause With The Ultimate Ability To Convict.

The district court also reasoned that Cuypers' conduct may not have constituted obstruction because his actions did not sufficiently impede the officers' performance

of their duties. (R. 56 at 17-18). In concluding that a jury could find a lack of probable cause, the court effectively treated the probable-cause inquiry as synonymous with the ultimate merits of an obstruction charge. Those inquiries are distinct.

Probable cause does not require proof that an offense actually occurred. Nor does it require officers to correctly predict how a court will ultimately resolve disputed questions regarding the scope of a criminal statute. Rather, probable cause exists whenever the facts and circumstances known to the officer would warrant a reasonable belief that the suspect committed an offense. See *District of Columbia v. Wesby*, 583 U.S. 48, 57–58 (2018).

The Wisconsin authorities relied upon by Cuypers and the district court do not establish otherwise. In *State v. Hamilton*, the Wisconsin Supreme Court addressed whether the evidence was sufficient to sustain a conviction for obstruction after trial. 120 Wis. 2d 532, 356 N.W.2d 169 (1984). Likewise, *Henes v. Morrissey* addressed the meaning of obstruction in the context of civil liability arising from an arrest for obstruction based solely on the subject's refusal to identify himself. 194 Wis. 2d 338, 533 N.W.2d 802 (1995). The court specifically held "without more than mere silence, there is no obstruction." *Id.* at 808.

Neither case holds that officers lack probable cause whenever a court later determines that the defendant's conduct did not actually satisfy every element of obstruction. Indeed, *Henes* recognized that obstruction occurs when conduct makes a difference in an official's ability to perform an act. 533 N.W.2d at 808.

31

Moreover, in *Henes*, the Wisconsin Supreme Court reversed the court of appeals' denial of qualified immunity because, seven years before Henes's arrest, *Hamilton* had clearly established that a private citizen could not be arrested merely for refusing to identify himself. 533 N.W.2d at 809. In reaching that conclusion, however, the court emphasized the limited scope of its prior decision in *Hamilton*. The court explained that *Hamilton* did not address the broader questions of whether an officer may arrest a suspect for obstruction based on a refusal to identify himself or whether an officer could incur civil liability for doing so. Rather, *Hamilton* addressed only whether the evidence presented at trial was sufficient to sustain a conviction for obstructing an officer based upon the defendant's refusal to identify himself. *Id*. Thus, *Henes* itself recognized the distinction between the evidentiary sufficiency necessary to support a conviction and the substantially different question of whether an officer could reasonably believe probable cause existed at the time of the arrest. *Id*.

Even accepting the district court's factual findings, Cuypers failed to immediately comply with commands issued during an ongoing detention including to keep his hands on his head, to face away, and to kneel. (R. 56 at 17). Whether those actions ultimately satisfy Wisconsin's obstruction statute is a separate question. At a minimum, officers could reasonably believe that such conduct hindered, delayed, or frustrated the performance of their duties. *State v. Hamilton* at 536.Accepting the district court's factual findings for purposes of appeal, Cuypers substantially complied with many commands but did not immediately kneel when instructed, engaged in intermittent hand movements contrary to commands, and turned his head

towards officers during portions of the encounter. (R. 56 at 3, 17). The district court concluded that a jury could find such conduct insufficient to support a conviction for obstruction. At minimum, reasonable officers could disagree regarding whether such conduct hindered, delayed, or frustrated the performance of law-enforcement duties. *Hamilton* at 536.

Indeed, the district court's extensive discussion of Wisconsin obstruction law demonstrates that the issue required legal and factual judgment. That is precisely the type of decision-making that § 893.80(4) protects from retrospective tort liability.

### C. Officers Acting In The Judicial Process Enjoy Absolute Immunity Regardless Of Alleged Malice.

The district court further erred by treating evidence allegedly bearing on malice as sufficient to defeat immunity. Wisconsin law has long recognized that participants in the judicial process enjoy immunity from malicious-prosecution claims irrespective of alleged malice. *Bromund v. Holt*, 24 Wis. 2d 336, 341, 129 N.W.2d 149 (1964). As *Bromund* explained:

> Judicial officers acting in the exercise of their jurisdiction are exempt from civil liability for malicious prosecution irrespective of the existence of malice or corrupt motives.

*Id.* Although there is authority to the contrary, the same immunity is, in general, extended to the police and other law enforcement officers performing functions intimately associated with the initiation of judicial proceedings. *Id.*

The district court relied on a post-incident discussion regarding possible charges and its interpretation of Officer Gaard's report as evidence from which a jury might infer an improper motive. (R. 56 at 19–20). Even accepting those factual inferences,

33

malice does not defeat immunity where the challenged conduct consists of actions taken in connection with the initiation of judicial proceedings.

The district court therefore erred by allowing allegations concerning motive to substitute for the required immunity analysis.

### D. Brown And Gaard Did Not Initiate The Prosecution As A Matter Of Law.

Even if immunity does not apply, Brown and Gaard are entitled to judgment because the record does not satisfy the initiation element of a malicious-prosecution claim. Wisconsin limits liability to those who institute proceedings "by, or at the instance of" the defendant. *Elmer v. Chicago & N.W. Ry. Co.*, 257 Wis. 228, 231, 43 N.W.2d 244 (1950).

The undisputed record establishes that Taylor alone issued the citation, signed the citation, and exercised the authority to commence proceedings. (R. 56 at 4, 20). The district court identified no evidence that Brown or Gaard signed the citation, directed Taylor to issue it, possessed authority over the charging decision, or otherwise instituted proceedings against Cuypers. (R. 56).

*Pollock v. Vilter Manufacturing Corp.*, 23 Wis. 2d 29, 40, 126 N.W.2d 602 (1964), forecloses the district court's reasoning. There, the Wisconsin Supreme Court held that a defendant who supplied information leading to criminal charges did not initiate the prosecution because the charging official exercised independent judgment before commencing proceedings. *Id.*

The same principle controls here. Even accepting the district court's finding that Taylor consulted Brown and Gaard and considered their views, consultation is not

initiation. Because Taylor exercised independent judgment and alone commenced proceedings, Brown and Gaard cannot be liable for malicious prosecution as a matter of law.

## CONCLUSION

This appeal presents legal questions concerning the proper application of qualified immunity, the Fourth Amendment's reasonableness standard, and Wisconsin's discretionary-immunity doctrine. Even accepting the district court's factual findings for purposes of appeal, the district court committed multiple legal errors.

The district court denied qualified immunity without identifying precedent that squarely governed the circumstances confronting Officers Gaard, Taylor, and Brown. In doing so, it relied upon broad constitutional principles rather than the highly particularized authority required by the Supreme Court's qualified-immunity jurisprudence. Because no clearly established law placed the constitutional questions presented here beyond debate, Defendants are entitled to qualified immunity on Cuypers' taser, firearm-pointing, and failure-to-intervene claims.

The district court further erred by granting Cuypers partial summary judgment on his excessive-force claim. Even accepting the district court's factual findings, *Barnes* requires consideration of the entire encounter rather than a narrow focus on the final moments before force was used. The district court also improperly transformed fact-specific precedent into a categorical rule and resolved a constitutional question that remains, at minimum, subject to reasonable debate.

The district court likewise erred in denying summary judgment on Cuypers' malicious-prosecution claim. The challenged charging decision involved the exercise

35

of discretionary law-enforcement judgment protected by Wis. Stat. § 893.80(4). Even accepting the district court's factual inferences regarding motive, Wisconsin's immunity doctrine bars the claim. In addition, Brown and Gaard did not initiate the prosecution as a matter of Wisconsin law, and the district court applied an unduly restrictive conception of probable cause.

Accordingly, Defendants-Appellants respectfully request that this Court: (1) reverse the district court's denial of qualified immunity to Officers Gaard, Taylor, and Brown; (2) reverse the district court's grant of partial summary judgment to Cuypers on his excessive-force claim against Officer Gaard; (3) direct entry of judgment in favor of Officers Gaard, Taylor, and Brown on Cuypers' federal claims, or alternatively remand with instructions consistent with this Court's opinion; (4) reverse the district court's denial of summary judgment on Cuypers' malicious-prosecution claim and direct entry of judgment in Defendants' favor on that claim; and (5) grant such other and further relief as the Court deems just and proper.

Respectfully submitted this 5th day of June, 2026.

By: _/s/ Kiley B. Zellner_
KILEY B. ZELLNER
Counsel of Record
WI State Bar No. 1056806
SAMUEL C. HALL, JR.
WI State Bar No. 1045476
MAXWELL P. CONGDON
WI State Bar No. 1139726
CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants-Appellants
710 N. Plankinton Avenue, Suite 500
Milwaukee, Wisconsin 53203
Phone: 414-271-7722
Fax: 414-271-4438
kzellner@crivellolaw.com
shall@crivellolaw.com
mcongdon@crivellolaw.com

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(g), FRAP RULE 32(c)

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 8,880 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f ).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 12-point Century Schoolbook style font.

Respectfully submitted this 5th day of June, 2026.

By:     */s/ Kiley B. Zellner*
KILEY B. ZELLNER
Counsel of Record
WI State Bar No. 1056806
SAMUEL C. HALL, JR.
WI State Bar No. 1045476
MAXWELL P. CONGDON
WI State Bar No. 1139726
CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants-Appellants
710 N. Plankinton Avenue, Suite 500
Milwaukee, Wisconsin 53203
Phone: 414-271-7722
Fax: 414-271-4438
kzellner@crivellolaw.com
shall@crivellolaw.com
mcongdon@crivellolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2026, the foregoing Defendants-Appellants Brief has been electronically filed with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted this 5th day of June, 2026.

By:  */s/ Kiley B. Zellner*
KILEY B. ZELLNER
Counsel of Record
WI State Bar No. 1056806
SAMUEL C. HALL, JR.
WI State Bar No. 1045476
MAXWELL P. CONGDON
WI State Bar No. 1139726
CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants-Appellants
710 N. Plankinton Avenue, Suite 500
Milwaukee, Wisconsin 53203
Phone: 414-271-7722
Fax: 414-271-4438
kzellner@crivellolaw.com
shall@crivellolaw.com
mcongdon@crivellolaw.com

# CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel certifies that all material required by

Circuit Rule 30(a) and (b) are included in the appendix.

Respectfully submitted this 5th day of June, 2026.

By: */s/ Kiley B. Zellner*
KILEY B. ZELLNER
Counsel of Record
WI State Bar No. 1056806
SAMUEL C. HALL, JR.
WI State Bar No. 1045476
MAXWELL P. CONGDON
WI State Bar No. 1139726
CRIVELLO, NICHOLS & HALL, S.C.
Attorneys for Defendants-Appellants
710 N. Plankinton Avenue, Suite 500
Milwaukee, Wisconsin 53203
Phone: 414-271-7722
Fax: 414-271-4438
kzellner@crivellolaw.com
shall@crivellolaw.com
mcongdon@crivellolaw.com

# REQUIRED SHORT APPENDIX TABLE OF CONTENTS

Decision and Order Granting in Part Plaintiff's Motion for Summary
    Judgment and Denying Defendants' Motion for Summary
    Judgment dated February 9, 2026 ............................................. APP001

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

IAN RICHARD CUYPERS,

Plaintiff,

v.

JUSTIN TAYLOR, TAYLOR GAARD,
MATTHEW BROWN, and CITY OF SUPERIOR,
Defendants.

OPINION and ORDER

24-cv-743-jdp

---

City of Superior police officers stopped plaintiff Ian Cuypers after he drove the wrong way down a one-way street. Guns drawn, the officers ordered Cuypers to get out of his vehicle, to step backward, to face away from them, to keep his hands on his head, and to kneel. When Cuypers did not immediately obey this last instruction, Officer Taylor Gaard tased him. Cuypers was subsequently charged with resisting or obstructing an officer. He was acquitted after a jury trial.

Cuypers asserts claims for excessive force, malicious prosecution, and intentional infliction of emotional distress against three of the officers who were on the scene during this incident. Both sides move for summary judgment. Cuypers asks for partial summary judgment that Gaard used excessive force when she tased him. Dkt. 38. Defendants ask for summary judgment on all claims. Dkt. 30.

The court will grant Cuypers's motion and deny defendants' motion. Video footage and the undisputed facts show that Cuypers immediately pulled over, got out of the car when ordered to do so, kept his hands above his head, and substantially complied with defendants' instructions. Yet from the beginning, defendants treated the situation like a high-risk event, escalating what should have been a simple traffic stop into a volatile encounter that ended with

APP001

a significant use of force. No reasonable jury could find that the use of a taser was reasonable here, and if a jury credited Cuypers's view of the facts, it could find for him on his other claims as well.

## UNDISPUTED FACTS

The court draws the following facts from the officers' dash and body camera footage and from the parties' proposed findings of fact. These facts are undisputed.

On the evening of February 28, 2024, Ian Cuypers was driving in Superior, Wisconsin, delivering orders for DoorDash. Superior police officer Justin Taylor observed Cuypers turn and begin driving the wrong way down a one-way street. Taylor activated his lights and Cuypers pulled over. From inside his police vehicle, Taylor observed Cuypers reaching across to the passenger's side of his car and rummaging around. (Cuypers was searching for his insurance paperwork inside his glove compartment.) Taylor called for backup, saying on his radio, "there's a lot of furtive movements, I'll take a second."[1] Dkt. 32-3 (Taylor dash cam 1:19–1:23). Taylor got out of his police vehicle but did not approach Cuypers. From his vantage point behind Cuypers's vehicle, Taylor observed Cuypers "looking down a lot and looking around." Dkt. 42 (Taylor Dep. 119:21–120:3).

Less than two minutes later, defendant officers Taylor Gaard and Matthew Brown and non-defendant officers Jason Moen and Dylan Crist arrived on the scene. Taylor told the other officers that Cuypers had been "digging around a lot in the passenger's side, in the center

---

[1] Taylor testified that in the police department, a request for a "second" means a request for an additional officer to respond to the scene. Dkt. 42 (Taylor Dep. 111:8–21).

APP002

console, and everywhere else." Dkt. 32-4 (Taylor body cam 2:13– 2:18). Taylor and Gaard drew their guns and pointed them at Cuypers's vehicle.

Brown yelled for Cuypers to put his hands where they could see them and Cuypers stuck his hands out the driver-side window. Taylor told Cuypers to open the door with his left hand, which Cuypers did. Taylor directed Cuypers to step out of the vehicle with his hands up, facing away from the officers. Cuypers got out of the vehicle and turned towards the officers with his hands raised in a questioning gesture. He asked, "what's happening?" Taylor told him again to face away, and Cuypers did. Dkt. 32-3 (Taylor dash cam 3:05–3:15). On Taylor's instruction, Cuypers placed his hands behind his head and interlaced his fingers. He then turned his head toward the officers again, yelling something that is not audible on the body or dash cam footage. He turned back around when the officers told him to do so.

Taylor admonished Cuypers for "not listening" and told him to move slowly backwards. Cuypers did so, saying, "I feel like I'm being assaulted." At one point, he removed his hands from his head and threw a bandana that he was wearing on his head to the ground, but he kept his hands visible in the air while he did so. Brown told Cuypers, "Don't do anything other than keep your hands on top of your head." Cuypers asked if there were guns on him and said, "I really do not feel like I am being treated well." He asked multiple times for an explanation of what was going on, but the officers didn't answer him.

What happened next occurred over the course of approximately 15 seconds. Dkt. 32-3 (Taylor dash cam 4:15–4:30). Brown directed Cuypers twice to get down on his left knee, while Cuypers, with his hands still up, asked the officers what he had done. Gaard said, "do it now or you're going to get tased!" Brown told Cuypers a third time to get down on his left knee and

APP003

immediately after, Gaard deployed her taser, striking Cuypers in the back and legs. Cuypers screamed and collapsed to the ground.

Officers moved in and handcuffed Cuypers. Gaard told Cuypers not to move, or he would be tased again. Cuypers cried and said, "I'm going to die here, aren't I? Am I going to die?" Dkt. 40-8 (Gaard body cam 2:50–2:54). After about a minute, Cuypers told the officers that he couldn't feel his legs and allowed officers to lift him into a standing position. The officers placed Cuypers against a police vehicle so that Gaard could remove the taser prongs from his body. Gaard told Cuypers that he was in this position because he wasn't following the officers' commands. Dkt. 40-8 (Gaard body cam 5:50–6:00).

The officers arrested Cuypers, and Taylor issued him two citations for violating civil ordinances: one for driving the wrong way down a one-way street and one for resisting or obstructing an officer. In July 2024, Cuypers was acquitted of the obstruction charge after a jury trial.

ANALYSIS

Cuypers's claims fall into three categories. First, he asserts federal claims under 42 U.S.C. § 1983, contending that each of the officer defendants used excessive force against him in violation of his Fourth Amendment rights or failed to intervene to prevent the other officers from using excessive force. Second, he asserts state-law claims for malicious prosecution and intentional infliction of emotional distress against each of the officer defendants. Third, he asserts a state-law indemnification claim against the City of Superior.

On a motion for summary judgment, the question is whether there are any genuine factual disputes that could make a difference to the outcome of the case; or in other words,

APP004

whether a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). But in "rare circumstances when video footage clearly contradicts the nonmovant's claims, [courts] may consider that video footage without favoring the nonmovant." *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 372, 378–81 (2007)).

## A.  Federal use of force claims

The basic question for an excessive force claim under the Fourth Amendment is whether the officer used "greater force than was reasonably necessary." *Snukis v. Taylor*, 145 F.4th 734, 741 (7th Cir. 2025). Courts assess the amount of force used from the perspective of a reasonable officer in light of the totality of the circumstances known to the officer, without regard to the officer's actual intent or his subjective beliefs. *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 472–73 (7th Cir. 2015). In assessing reasonableness, relevant factors include the seriousness and immediacy of any threat posed by the plaintiff, the severity of any suspected crime, and the extent of the plaintiff's resistance or interference with an officer's duties. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015). When all material facts are undisputed, "reasonableness is a pure question of law" for the court. *Siler v. City of Kenosha*, 957 F.3d 751, 759 (7th Cir. 2020).

Qualified immunity shields government officials who make good-faith mistakes in the performance of their duties. Qualified immunity protects government officials from individual liability under 42 U.S.C. § 1983 unless the unlawfulness of the official's conduct was clearly established at the time of the violation. *Bradley v. Vill. Of Univ. Park, Illinois*, 59 F.4th 887, 904

(7th Cir. 2023) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)). For the unlawfulness of a defendant's conduct to be clearly established, a reasonable officer in the defendant's shoes would need to understand that he was violating the plaintiff's right. *Doxtator v. O'Brien*, 39 F.4th 852, 863 (7th Cir. 2022). The use of excessive force is an area of the law "in which the result depends very much on the facts of each case," so police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). "This sounds like a high bar because it is—qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Doxtator*, 39 F.4th at 863 (citation and quotation marks omitted).

Cuypers contends that Taylor and Gaard used excessive force when they pointed their guns at him and that Gaard used excessive force when she tased him. He also contends that each of the defendants failed to intervene to prevent the others from using excessive force. Defendants contend that the force used on Cuypers was reasonable under the circumstances and that, even if it was not, they are entitled to qualified immunity. They also contend that the failure-to-intervene claims fail because the defendants lacked a reasonable opportunity to intervene, and that Cuypers's request for punitive damages fails as a matter of law.

### 1. Gaard's use of a taser

Both defendants and Cuypers have moved for summary judgment on the issue whether Gaard used excessive force when she deployed her taser to Cuyper's back and legs. Deploying a taser is a significant use of force because it inflicts intense pain and temporary paralysis on its victim. *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 726 (7th Cir. 2013). In the Seventh Circuit, an officer's use of a taser is objectively reasonable, or at least does not violate clearly established law, if a suspect is actively resisting arrest. *Dockery v. Blackburn*, 911 F.3d 458, 467

(7th Cir. 2018). Active resistance can include physically lashing out at officers or "declining to follow instructions while acting in a belligerent manner." *Id.* (citing *Forrest v. Prine*, 620 F.3d 739, 745–46 (7th Cir. 2010)). Using a taser can also be reasonable if a suspect poses a threat to the officers or others on the scene. *Bell v. Irwin*, 321 F.3d 637 (7th Cir. 2003) (suspect was armed with knives, threatened suicide, and made a move toward a nearby propane tank); *Shirley v. Rabensteine*, No. 22-2147, 2023 WL 129432 (7th Cir. Jan. 9, 2023) (suspect hid in an attic for hours, suddenly fell through the ceiling, and may have been armed). But the law is clearly established that officers may not use tasers merely to gain compliance from suspects accused of minor offenses who are not resisting arrest or are only passively resisting. *Dockery*, 911 F.3d at 467; *see also Abbott*, 705 F.3d at 732; *Cyrus v. Town of Mukwonago*, 624 F.3d 856 (7th Cir. 2010).

In light of these rules, the dispositive question in this case is whether a reasonable officer in Gaard's position would have believed that Cuypers was actively resisting or otherwise posed a threat. The court concludes that a reasonable officer could not have believed those things, nor could any reasonable jury find otherwise. This is not a close case. Video footage shows that Cuypers was not actively resisting arrest. He immediately pulled over when Taylor activated his lights. He followed officers' instructions to put his hands up and to get out his vehicle, and he kept his hands above his head at all times from when he exited his vehicle to when Gaard deployed her taser. He moved his hands slightly and turned his head toward the officers a few times, but he put his hands back on his head and turned away when officers reminded him to do so. Cuypers appeared frightened and confused, but he was not belligerent or resistant; on the contrary, Cuypers substantially complied with the officers' instructions throughout the encounter.

Nor could any reasonable officer have believed that Cuypers posed a threat in the moment immediately before Gaard deployed her taser. A screenshot of that moment is shown below from two vantage points: Taylor's dash cam and Brown's body cam.





The images show that when Gaard deployed her taser, Cuypers was facing away from the officers, with his hands hovering near his head. He had not yet obeyed Brown's instruction to get down on his left knee, but he was not reaching for a weapon, and his body position gave no indication that he was planning to imminently flee or attack the officers. He was no longer standing near his vehicle, and Taylor, Gaard, and Brown all had weapons out and ready, so any

8

threat that Cuypers may theoretically have posed when he was in his vehicle was neutralized. "This was simply not the kind of 'tense, uncertain, and rapidly evolving' situation that required 'split-second' judgment calls." *See Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 526 (7th Cir. 2012) (quoting *Graham v. Connor,* 490 U.S. 386, 397 (1989)). The circumstances don't support any significant use of force against Cuypers in this moment.

Defendants argue that a reasonable officer would have perceived Cuypers as a threat for the following reasons:

- He made "furtive movements" in his vehicle.

- He "refused multiple, loud, clear commands."

- He "was moving toward officers after failing to keep his hands on his head and face away from officers."

- He was "exhibiting target glancing behaviors consistent with imminent assault or flight."

Dkt. 31, at 10. None of these reasons makes the use of significant force reasonable. Taylor testified that he believed the "furtive movements" may have been Cuypers reaching for a weapon or attempting to conceal contraband. Dkt. 42 (Taylor Dep. 99:3–9). But even if Cuypers had retrieved a weapon, he would have had no reasonable opportunity to use it when Gaard deployed her taser, because at that point he was standing several feet from the officers, facing away, with his hands in the air. Defendants' assertion that Cuypers moved toward the officers is directly contradicted by the video evidence, which shows that Cuypers moved backwards toward the officers only when Taylor directly instructed him to do so. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) (instructing lower courts not to consider testimony that "is so utterly discredited by the record that no reasonable jury could have believed [it]"). And as

9

for Cuypers's alleged non-compliance, circuit precedent is clear that officers cannot use significant force solely to gain compliance, if the non-compliance does not pose a risk to officers or others at the scene. *Phillips*, 678 F.3d at 524–25; *Cyrus*, 624 F.3d at 863. No reasonable officer could interpret Cuypers's failure to keep his hands on his head and to stay facing away from the officers as posing a risk. Cuypers's hands were visible in the air the entire time; his feet remained facing away from the officers; and he turned back around each time the officers reminded him to do so.

That leaves defendants' argument that Cuypers engaged in "target glancing behaviors consistent with imminent assault or flight." Dkt. 31, at 10. In her deposition, Gaard testified that "target glancing" means that a suspect repeatedly glances in the direction of law enforcement officers, possibly to gauge their position in anticipation of fleeing or attacking. Dkt. 36 (Gaard Dep. 76:12–23). But Gaard was unable to identify any characteristic that distinguishes "target glancing" from simply looking at law enforcement officers, nor did she identify anything about the specific way that Cuypers was looking at them that suggested he was planning to flee or attack. *See id.* (Gaard Dep. 79:22–89:24). Defendants' "target glancing" argument amounts to an assertion that officers can use significant force anytime a suspect looks at them, which is plainly inconsistent with circuit precedent.

Defendants cite *Clarett v. Roberts*, 657 F.3d 664 (7th Cir. 2011), and *United States v. Norris*, 640 F.3d 295 (7th Cir. 2011), but those cases are readily distinguishable. In *Clarett*, an offer tased a suspect who was blocking them from entering her son's bedroom, where the officer could hear a "commotion" between the son and the officer's colleagues. 657 F.3d at 675. The court held that the use of a taser was reasonable because the suspect was preventing the officer from assisting their colleagues, who the officer  reasonably believed needed help. *Id.* In *Norris*,

10

officers tased a suspect who ignored commands to stop and show his hands. 640 F.3d at 303. The court held that the officers reasonably believed that the suspect might have been reaching for a weapon, because his hands were near his waistband and out of view. *Id.* The common thread in both *Clarett* and *Norris* is that officers reasonably perceived the suspect as a threat to themselves or others on the scene. Here, Cuypers had his hands up and had substantially complied with officers' commands to get out of his vehicle, to turn away from them, and to back up. No reasonable officer could have perceived him as a threat to anyone's safety at the time that he was tased.

The law is clear that it is unreasonable to deploy a taser against a non-violent suspect who is not actively resisting or otherwise posing a threat. The video evidence leaves no doubt that Cuypers was not actively resisting and did not pose a threat to the officers or anyone else on the scene. Gaard's use of a taser was objectively unreasonable and violated clearly established law, so the court will grant Cuypers's motion for partial summary judgment and deny defendants' motion on the excessive force claim based on Gaard's use of a taser.

### 2. Taylor's and Gaard's pointing their gun at Cuypers

Defendants move for summary judgment on Cuypers's excessive force claims based on Taylor and Gaard's pointing their guns at him. Pointing a gun at someone is a use of force, which is evaluated for objective reasonableness like any other kind of force. *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009); *Jacobs v. City of Chicago*, 215 F.3d 758, 774 (7th Cir. 2000); *McDonald by McDonald v. Haskins*, 966 F.2d 292, 292–93 (7th Cir. 1992). The court of appeals has held that it is not objectively unreasonable for an officer to point a gun at an individual who presents a credible threat. *Baird*, 576 F.3d at 346. But "gun pointing when an individual

11

presents no danger is unreasonable and violates the Fourth Amendment." *Id.* at 345 (citing *Jacobs* and *McDonald*).

Cuypers contends that under clearly established law, he did not present a credible threat that would have justified Taylor and Gaard pointing their guns at him. Cuypers relies on *Jacobs* and *Baird*, which he says stand for the proposition that officers may not point guns at compliant individuals who are suspected of only minor, non-violent offenses. In *Jacobs*, officers pointed a gun at the plaintiff for more than ten minutes while they searched his apartment, even though they knew that he was not the person they were looking for and he was entirely compliant with officers' directions. The court held that it was unreasonable for the officers to point a gun at the plaintiff "when they allegedly had no reason to suspect that he was a dangerous criminal, or indeed that he had committed any crime at all, [he] was unarmed, and when [he] had done nothing either to attempt to evade the officers or to interfere with the execution of their duties." 215 F.3d at 774. In *Baird*, an officer detained multiple people at an auto body shop and a nearby warehouse at gunpoint and held them for nearly two hours while he investigated the possible alteration of a vehicle identification number. The court held that the officer violated the detainees' clearly established rights, because "there was no suggestion of danger, either from the alleged crime that was being investigated or the people he was targeting." 576 F.3d at 346.

Defendants don't dispute the general rule that it is unreasonable for officers to point guns at individuals who don't present a danger. But they say that Taylor and Gaard reasonably believed that Cuypers did present a danger, because (1) he made "furtive" movements in his vehicle and (2) he failed to comply with officers' commands. A reasonable jury could find that neither of these things presented a threat of any kind. In his deposition, Taylor could not

12

APP012

identify anything that distinguished the "furtive" movements Cuypers made from the movements someone would make when attempting to get their insurance paperwork from their glove box. Dkt. 42 (Taylor Dep. 97:19–101:2). Nor did the description of Cuypers's movements that Taylor gave Gaard when she arrived at the scene suggest that he was doing anything other than looking for his insurance paperwork. Dkt. 32-4 (Taylor body cam 2:13– 2:18) (Taylor explaining to Gaard and the other officers that Cuypers was "digging around a lot in the passenger's side, in the center console, and everywhere else"). The court has already explained that Cuypers's alleged "non-compliance" amounted to at most minor deviations from the officers' instructions. In short, a reasonable jury could find that Taylor and Gaard pointed their guns at a compliant individual who presented no threat of danger and had done nothing other than turn the wrong way down a one-way street. That would be objectively unreasonable and would violate clearly established law under *Baird* and *Jacobs*, so Taylor and Gaard are not entitled to summary judgment on the gun pointing claims on either reasonableness or qualified immunity grounds.

### 3. Failure to intervene

Cuypers also asserts excessive force claims against Gaard, Taylor, and Brown on a failure-to-intervene theory. Cuypers says that Gaard failed to intervene to prevent Taylor from pointing his firearm at Cuypers, and that Taylor and Brown failed to intervene to stop Gaard from using her taser. A defendant may be held liable for failing to stop another officer's use of excessive force if the defendant had reason to know that the other officer was violating the plaintiff's constitutional rights, and the defendant had a "realistic opportunity" to prevent the violation. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). "A realistic opportunity means a chance to warn the officer using excessive force to stop." *Miller v. Gonzalez*, 761 F.3d 822,

13

APP013

826 (7th Cir. 2014) (internal quotation marks omitted). It is generally for the jury to determine whether the plaintiff has proven the elements for a failure to intervene. *Abdullahi v. City of Madison*, 423 F.3d 763, 773–74 (7th Cir. 2005).

The court will allow Cuypers's failure-to-intervene claims to proceed to trial.  This court has held in multiple other cases that even a few seconds of warning is enough to raise a fact question about whether another officer could have intervened. *See Harris v. City of La Crosse*, 745 F. Supp. 3d 733, 754 (W.D. Wis. 2024); *Stabenow v. City of Eau Claire*, 546 F. Supp. 3d 787, 799 (W.D. Wis. 2021) (collecting cases). The video footage shows that Gaard had ample opportunity to warn Taylor to put his gun down because he had his gun trained on Cuypers for more than a minute. Dkt 40-7 (Taylor body cam 2:31–3:53). Gaard was standing behind Taylor for at least some of this time; the parties don't explain whether she could see him pointing his gun and that will be up to the jury to decide. As for the use of the taser, the video footage shows that approximately two seconds before she deployed her taser, Gaard warned Cuypers that he would be tased if he didn't comply. Dkt. 32-3 (Taylor dash cam 4:23–4:28). The laser sights from Gaard's taser were also visible on Cuypers's back for several seconds before Gaard deployed the taser. *Id.* A reasonable jury could decide from those facts that Taylor and Brown had at least a few seconds to tell Gaard not to use the taser.

### 4.  Punitive damages

Punitive damages are available in § 1983 cases upon showing of "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Defendants contend that Cuypers cannot meet this standard for any of his § 1983 claims.

14

APP014

The court concludes that a reasonable jury could find that defendants acted with callous indifference to Cuypers's rights. The court has already concluded that a reasonable jury could disbelieve that Cuypers was acting in a non-compliant or threatening manner; if so, it could also find that it was reckless or callous indifference for defendants to point their guns at him and to tase him. The video footage also shows that the defendants shouted at Cuypers for not following instructions and at one point, Gaard told Cuypers that he was he was in this position because he wasn't following their commands. Dkt. 40-8 (Gaard body cam 5:50–6:00). A reasonable jury could infer that the defendants allowed Cuypers to be tased simply to punish him for not listening to them.

## B.  State-law claims

Cuypers asserts state-law claims against each of the defendant officers for malicious prosecution based on their citing him for resisting or obstructing an officer, and for intentional infliction of emotional distress based on their behavior during and after the traffic stop. As an initial matter, defendants contend that they are immune from suit under Wis. Stat. § 893.80(4), which confers immunity on government officers and employees for discretionary acts performed in the scope of their official duties. *Sheridan v. City of Janesville*, 164 Wis. 2d 420, 425, 474 N.W.2d 799 (Ct. App. 1991). But defendants acknowledge that governmental immunity does not apply to acts that are "malicious, willful, and intentional." *Est. of Perry v. Wenzel*, 872 F.3d 439, 462 (7th Cir. 2017) (citing *Bicknese v. Sutula*, 260 Wis. 2d 713, 660 N.W.2d 289, 296 (2003)). Malicious prosecution and intentional infliction of emotional distress are intentional torts, so malice or intent is one of the elements that Cuypers will have to prove to prevail on those claims. *Turner v. Sanoski*, 2010 WI App 92, ¶¶ 12–13; 327 Wis. 2d 503, 787 N.W.2d 429; *Rabideau v. City of Racine*, 2001 WI 57, ¶¶ 34–36, 243 Wis. 2d 486,

15

627 N.W.2d 795. Defendants cite no authority for the view that governmental immunity applies to shield a government officer or employee from liability for an intentional tort.

### 1. Malicious prosecution

A state-law malicious prosecution claim has six elements:

1. Judicial proceedings were started or continued against the plaintiff.

2. The proceedings were put in motion by or at the instance of the defendant.

3. The proceedings were terminated in the plaintiff's favor.

4. There was malice in instituting the proceedings.

5. There was no probable cause for instituting the proceedings.

6. The plaintiff suffered damages.

*Elmer v. Chicago & N.W. Ry. Co.*, 257 Wis. 228, 231, 43 N.W.2d 244 (1950). There is no dispute as to the first, third, and sixth elements. Cuypers was cited for resisting or obstructing an officer in violation of City of Superior Ordinance § 102-1. A jury acquitted him of that charge in July 2024. And Cuypers testified that he experienced emotional distress from this incident, for which he sought medical care. Defendants contend that summary judgment is warranted because Cuypers cannot establish the other three elements. Defendants say that they had probable cause that Cuypers had obstructed officers, that Cuypers lacks evidence of malice, and that for defendants Gaard and Brown, Cuypers lacks evidence that they were involved in the citation.

Probable cause is the amount of evidence that would lead a reasonable police officer to believe that the individual probably committed a crime. *State v. Weber*, 2016 WI 96, ¶ 20, 372 Wis. 2d 202, 887 N.W.2d 554; *Heilgeist v. Chasser*, 98 Wis. 2d 97, 295 N.W.2d 26 (Ct. App. 1980). Probable cause is a mixed question of fact and law. If the facts are in dispute, then the

16

jury determines the facts, and the court determines whether those facts amount to probable cause. If the facts are undisputed, then probable cause is a pure question of law. *Elmer*, 257 Wis. at 232.

The ordinance Cuypers was cited under prohibits individuals from "commit[ting] an act in violation of Wis. Stats. §§ 946.40 and 946.41." City of Superior Ordinance § 102-1. Defendants assert that Cuypers violated § 946.41, which makes it unlawful to "knowingly resist[] or obstruct[] an officer while such officer is doing any act in an official capacity and with lawful authority." Wis. Stat. § 946.41(1). Defendants say that Cuypers obstructed them because he failed to comply with orders to keep his hands on his head, to face away, and to kneel. Cuypers argues that any non-compliance on his part was too minor to be obstruction, because it didn't impede the officers' ability to perform their duties.

The court agrees with Cuypers. Under Wisconsin law, an individual "obstructs" an officer if his conduct prevents or makes it more difficult for an officer to perform his duties. Wis. JI-Criminal 1766. "The action justifying an arrest for obstruction cannot simply 'inconvenience' the official; the action must make a difference in an official's ability to perform an official act." *Henes v. Morrissey*, 533 N.W.2d 802, 808 (Wis. 1995); *see also McGowan v. City of Milwaukee*, No. 19-cv-0781-bhl, 2022 WL 3354746, at *9–*10 (E.D. Wis. Aug. 12, 2022) (arresting plaintiffs for refusing to disperse from a protest scene would be justified only if the refusal inhibited officers' ability to maintain order). *Henes* implies that an officer does not have probable cause to arrest someone for failing to comply with an order unless the officer reasonably believes that the non-compliance was impeding his ability to maintain safety or perform other law enforcement duties.

APP017

Defendants point out that in previous cases, both this court and the Eastern District of Wisconsin have held that failure to comply with lawful orders provides probable cause for a § 946.41 violation. *Stabenow*, 546 F. Supp. 3d at 800–01; *Prip v. Erwin*, No. 14-cv-552-wmc, 2015 WL 4394526 (W.D. Wis. July 16, 2015); *United States v. Bogan*, No. 17-cr-128, 2017 WL 9485688 (E.D. Wis. Sept. 26, 2017).[2] But those cases did not explicitly grapple with the issue presented here; on the contrary, it was at least implicit in each case that the suspect's non-compliance had interfered with the officers' ability to maintain safety or complete law enforcement duties. *See Stabenow*, 546 F. Supp. 3d at 800 (suspect ignored commands to keep his hands out of his pockets after admitting he had a knife); *Prip*, 2015 WL 4394526, at *5 (suspect may have been attempting to interfere with officers' arrest of another protester); *Bogan*, 2017 WL 9485688, at *1 (suspect refused to get out of vehicle after officers noticed he was holding a handgun). *Stabenow*, *Prip*, and *Bogan* do not support defendants' position that any non-compliance, regardless of how harmless, amounts to obstruction under Wis. Stat. § 946.41.

That leaves the question whether Cuypers's non-compliance did in fact impede the officers from performing their duties. Cuypers has admitted that he moved his hands slightly when officers had told him to interlace his fingers behind his head, that he occasionally turned his head toward officers when they had told him to face away, and that he did not immediately

---

[2] Defendants also cite *Pullen v. House*, 88 F. Supp. 3d 927 (W.D. Wis. 2015) and *Harris v. City of La Crosse*, 745 F. Supp. 3d 733 (W.D. Wis. 2024), but those cases aren't instructive either. In *Pullen*, the court concluded that officers may have lacked lawful authority to give commands, so it did not reach the issue whether the plaintiff's non-compliance amounted to obstruction. 88 F. Supp. at 939–40. In *Harris*, the court explicitly declined to decide whether disobeying orders amounts to obstruction under § 946.41; instead, it resolved the probable cause issue on qualified immunity grounds. 745 F. Supp. at 751.

18

APP018

kneel down when officers ordered him to do so. In his response brief, Cuypers argues that these acts of non-compliance were so minor that they could not possibly have impeded the officers' ability to conduct a safe traffic stop. Cuypers says that he never did anything to prevent defendants from placing handcuffs on him, and that the defendants did not need him to interlace his fingers behind his head or to kneel in order to handcuff him. Dkt. 47, at 35. Defendants did not contest this point in their reply brief, so they have forfeited any argument to the contrary. The court concludes that Cuypers's non-compliance did not impede the officers from performing their duties, so there was no probable cause to cite him for violating § 946.41.

As for malice, the court concludes that Cuypers has adduced evidence sufficient for a reasonable jury to find in his favor. For the purpose of a malicious prosecution claim, malice means that the defendants acted either with "ill will or vindictiveness toward the plaintiff" or that they acted "for an improper motive or purpose," meaning for a reason "other than the social one of bringing an offender to justice." *Meyer v. Ewald*, 66 Wis. 2d 168, 174–75, 224 N.W.2d 419 (1974). As evidence of malice, Cuypers points to body cam footage of a conversation between Brown and Taylor shortly after the incident. Brown told Taylor that it might be better to charge Cuypers with an ordinance violation compared with a criminal charge, because "everything was justified there [during the traffic stop]," but "how he [Cuypers] interprets the world might be a little different than how we do." Dkt. 40-7 (Taylor body cam 23:45–24:25). Taylor responded that he thought that if force was used, then he had to charge Cuypers with a crime. *Id.* (Taylor body cam 24:43–24:50). A reasonable jury could infer from this conversation that Brown and Taylor did not actually believe that Cuypers's behavior was obstruction, but wanted to prosecute him to justify their use of force. As for Gaard, a reasonable jury could find that her description of Cuypers's non-compliance in her use of force report does

19

not match the video footage. Dkt. 40-10 (describing Cuypers as beginning to "turn his body toward us" at the moment force was used). That could also support a reasonable inference that Gaard wanted to prosecute Cuypers for improper reasons.

That leaves the personal involvement element. A person is liable for malicious prosecution only if the judicial proceedings are initiated "by, or at the instance" of that individual. *Elmer*, 257 Wis. at 231. Taylor was undisputedly involved in initiating Cuypers's citation, because he was the officer who signed the citation. Defendants argue that Gaard and Brown weren't involved, but Cuypers has adduced evidence that Taylor consulted with Gaard and Brown about what charges to bring against Cuypers and that he took their advice. That's enough to create a triable issue on Gaard and Brown's involvement in initiating the charges.

### 2. Intentional infliction of emotional distress

Cuypers's intentional infliction of emotional distress claim is based on the same conduct as his excessive force and malicious prosecution claims, specifically, defendants' pointing their guns at him, tasing him, and citing him for obstruction. To establish a claim for intentional infliction of emotional distress, Cuypers must demonstrate that (1) the conduct was extreme and outrageous; (2) defendants intended to cause emotional distress; and (3) defendants' conduct did in fact cause extreme and disabling emotional distress. Wis. JI-Civil 2725; *see also Przybyla v. Przybyla*, 87 Wis. 2d 441, 444, 275 N.W.2d 112 (1978).

Defendants don't engage with the elements of this claim separately from their arguments about Cuypers's Fourth Amendment claims. They simply rehash their arguments that defendants' behavior was a legitimate law enforcement response, which the court has already rejected. Defendants' arguments on this claim are undeveloped, so they are forfeited

20

APP020

for the purpose of summary judgment. *See Irish v. BNSF Ry. Co.*, 674 F.3d 710, 714–16 (7th Cir. 2012).

## C. Indemnification

Defendants contend that Cuypers's indemnification claim under Wis. Stat. § 895.46 is premature because no judgment has yet been entered against the individual defendants. But this court has held that "it is appropriate and efficient to keep the county as a defendant in the case for the purpose of ordering complete relief." *Murphy v. Juneau Cnty.*, No. 22-cv-33-jdp, 2023 WL 3040649, at *7 (W.D. Wis. Apr. 21, 2023) (collecting cases); *see also Lewis v. Columbia Cnty.*, No. 23-CV-77-jdp, 2024 WL 1833817 (W.D. Wis. Apr. 26, 2024); *Hardick v. Cripe*, No. 23-cv-550-jdp, 2025 WL 71853 (W.D. Wis. Jan. 10, 2025) (explaining that the court will keep the municipality in the case, but not identify it as a defendant at trial). The court will take the same approach here and deny the motion for summary judgment for the City of Superior.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for partial summary judgment, Dkt. 38, is GRANTED as for plaintiff's Fourth Amendment excessive force claim against defendant Gaard for deploying her taser on Cuypers's lower back and legs.

2. Defendants' motion for summary judgment, Dkt. 30, is DENIED. The case will proceed to trial on the following claims and issues:

   a. Defendants Taylor and Brown failed to intervene to prevent Gaard from deploying her taser.

   b. Defendants Taylor and Gaard used excessive force against Cuypers in pointing his firearm at him.

21

APP021

c.  Defendant Gaard failed to intervene to prevent Taylor from pointing his firearm.

d.  Defendants Gaard, Taylor, and Brown violated Wisconsin law by initiating a malicious prosecution against him for obstructing officers.

e.  Defendants Gaard, Taylor, and Brown violated Wisconsin law by intentionally inflicting emotional distress on Cuypers.

f.  Compensatory and punitive damages for all claims.

g.  Indemnification against the City of Superior.

Entered February 9, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

22

APP022